**Oswald WILSON, Plaintiff,**

v.

**Norman C. PFEIFFER and New York Medical College, Defendants.**

**No. 81 Civ. 1816(MEL).**

United States District Court,
S.D. New York.

June 17, 1983.

Gladstein, Reif & Meginniss, Brooklyn, N.Y., for plaintiff; James Reif, Brooklyn, N.Y., of counsel.

Kelley, Drye & Warren, New York City, for defendants; John F. Gibbons, Arnold S. Klein, New York City, of counsel.

LASKER, District Judge.

Oswald Wilson, who alleges that he was dismissed from his employment at the New York Medical College ("the College") on account of racial discrimination, moves to reargue the decision of December 17, 1982 which dismissed the claims based on the United States Constitution, 42 U.S.C. § 1983, and the New York Human Rights Law, N.Y.Exec.Law § 296 (McKinney 1962). The constitutional and § 1983 claims were dismissed for lack of state action and the Human Rights Law claims were dismissed on grounds of res judicata. Wilson argues that the wrong legal standards were applied in both instances.

Defendants answer that the proper legal standards were applied, but that, in any event, it is unnecessary to reach the question of state action because, as a result of prior litigation, the plaintiff is collaterally estopped from pressing the constitutional claims.

I. *The Constitutional and Section 1983 Claims*

A. *Collateral Estoppel*

In the decision of December 17, 1982, we ruled that, under *Blum v. Yaretsky,* —— U.S. ——, 102 S.Ct. 2777, 73 L.Ed.2d 534 (U.S.1982), an allegation of state action is not adequate in the absence of a contention that the state coerced or significantly encouraged the challenged action. *Id.* at ——, 102 S.Ct. at 2785. Wilson argues that the coercion or significant encouragement standard is improper, and that in the case at hand he need allege only that the state *participated* in the decision to dismiss him. He contends that his allegation that the New York City Health and Hospitals Corporation ("HHC") discussed and approved the decision to dismiss him provides a sufficient basis for a finding of state action.

Defendants argue that the question of the appropriate standard for finding state action is academic because Wilson is precluded on grounds of collateral estoppel from attempting to prove that HHC participated in the College's decision to dismiss

Wilson. The defendants' contention is based on the following undisputed facts.

Wilson brought an earlier action pursuant to N.Y.Civ.Prac.Law § 7801 *et seq.* (McKinney 1981) ("the Article 78 proceeding") before the Supreme Court of New York County, Special Term, alleging that he was dismissed from the College because of racial discrimination. HHC was named as a defendant, and moved to dismiss on the grounds that (a) it did not participate in the College's decision to dismiss Wilson; and (b) it had no power to grant Wilson the relief he sought. In support of its contention that it did not participate in the decision to dismiss Wilson, HHC submitted an affidavit by its Director of Personnel for Lincoln Hospital, (the hospital from which Wilson was dismissed) stating that HHC did not participate in Wilson's termination "in any manner" and that Wilson's employment was terminated "solely by the unilateral action" of the College. (Affidavit of Orlando Rivera in Support of Motion to Dismiss Article 78 proceeding, ¶¶ 4, 7). In response, Wilson stated only that his salary was paid by funds provided by HHC and that "the ultimate authority responsible for the employment of [plaintiff] was the Health and Hospitals Corp." (Affidavit of Oswald Wilson in support of Article 78 Petition, ¶¶ 2, 3).

HHC's motion to dismiss was granted on the grounds that:

> "inasmuch as no evidence has been offered that HHC was involved in any way in petitioner's dismissal, the fact that HHC funded the College's operation of Lincoln does not provide a basis for imposing liability on HHC for the employment practices of the College."

*Wilson v. New York Medical College,* No. 14016/1980, slip op. at 2 (New York County, Special Term, Sept. 4, 1980). The question presented is whether this finding by the Article 78 court precludes this Court from considering whether HHC participated in Wilson's dismissal.

The rule of collateral estoppel in this Circuit was articulated in *Tucker v. Arthur Anderson & Co.,* 646 F.2d 721, 728 (2d Cir.

1981), *quoting* Restatement (Second) of Judgments § 68 (Tent.Draft # 4, 1977)

" 'When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.' "

Wilson contends that the Article 78 court's ruling does not fall within the rule because: (1) the issue of HHC's participation in Wilson's dismissal was not "actually litigated" in that he did not dispute the point; (2) the issue was not "essential to the judgment" because the court could have ruled on other grounds; and (3) he did not have a full and fair opportunity to litigate the issue because discovery is unavailable in Article 78 proceedings.

■ 1. The question of the extent of HHC participation in the decision to terminate Wilson's employment was squarely placed in issue by Personnel Director Rivera's affidavit, quoted above, and it was clearly a material issue: the claim of a lack of HHC participation could have been expected to, and did, provide a basis for dismissal of the action against HHC. Wilson apparently deemed the issue irrelevant and failed to respond to it. It was decided against him on the grounds of failure of proof. Three Circuits have ruled, and we agree, that under such circumstances an issue is deemed to have been "actually litigated" just as if it had been contested.

As explained by the Seventh Circuit: "The requirement of collateral estoppel that the issue be 'actually litigated' does not require that the issue be thoroughly litigated ... Any other result would permit a litigant to avoid the conclusive effect of collateral estoppel, by design or inadvertence, by denoting as irrelevant an issue clearly raised by his opponent and by refusing to introduce evidence on the issue."

*Continental Can Co. v. Marshall,* 603 F.2d 590, 596 (7th Cir.1979). *See also Grip-Pak, Inc. v. Illinois Tool Works, Inc.,* 694 F.2d 466, 469 (7th Cir.1982) ("[I]t makes no dif-

ference [on the question whether collateral estoppel applies] whether ... a finding was based on a complete failure of proof rather than on a weighing of competing proofs"); *James Talcott, Inc. v. Allahabad Bank, Ltd.,* 444 F.2d 451, 462 (5th Cir.), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); *United States v. Silliman,* 167 F.2d 607, 617 (3d Cir.), *cert. denied,* 335 U.S. 825, 69 S.Ct. 48, 93 L.Ed. 379 (1948).

■ 2. The fact that the action could have been decided on grounds other than those relied on by the court does not mean that the grounds that were relied on and formed the basis for the court's decision are not "essential to the judgment." *See* 1B Moore's Federal Practice ¶ 0.443 at 3920–21:

"The mere existence of another possible ground for a judgment, even though it abrogates the strict necessity of an adjudication upon a material issue, does not deprive the judgment of conclusive effect upon that issue if it was in fact determined."

*Cf. Winters v. Lavine,* 574 F.2d 46, 67 (2d Cir.1978) ("Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment.")

3. Wilson's assertion that Article 78 proceedings do not permit discovery is inaccurate: Article 78 proceedings are "special proceedings," C.P.L.R. § 7804, and, under C.P.L.R. § 408, discovery is allowed in special proceedings by leave of court. It is true that an Article 78 court has discretion to deny leave to take discovery, *see Pasta Chef, Inc. v. State Liquor Authority,* 47 A.D.2d 713, 364 N.Y.S.2d 638 (4th Dept. 1975); however, Wilson does not contend that he sought and was denied an opportunity to take discovery of defendants.

Moreover, the argument that Article 78 proceedings do not have res judicata or collateral estoppel effect in a federal court because of possible deficiencies in opportunities for discovery has been implicitly rejected in the numerous Second Circuit cases

which have accorded res judicata effect to Article 78 proceedings. *See Powell v. Ward,* 643 F.2d 924, 934 (2d Cir.), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981), and cases cited therein.

■ We conclude that the question of HHC's participation in Wilson's dismissal was actually litigated and essential to the judgment in a full and fair proceeding in state court. Accordingly, the ruling of the Article 78 court that HHC did not participate in Wilson's dismissal precludes further litigation of the question.

Furthermore, as defendants note, Wilson's claim under 42 U.S.C. § 1985(3) is also based on the alleged participation of HHC officials in his termination, and, in light of the ruling above, that claim must also be dismissed.

### B. State Action

■ Nothing said above is intended to indicate agreement with Wilson's view of the state action doctrine; to the contrary, having reviewed *Blum v. Yaretsky, supra,* and the cases relied on by Wilson, we conclude that the coercion or significant encouragement standard which we applied in the initial decision in this action is the appropriate standard.

Wilson argues that the coercion or significant encouragement standard is to be applied only to cases in which the defendant is a state official, as opposed to cases like the instant action in which the defendant is a private party.

Wilson misreads *Blum.* He is correct in noting that the Court in *Blum* distinguishes between cases in which defendants are private parties as distinct from state officials. However, in enunciating the coercion or significant encouragement standard, the Court cites four cases, *all* of which were against private, not state, defendants. It is difficult to conclude that the Supreme Court would have cited cases in support of a proposition which it believed was inapplicable to the very cases cited.

The cases relied on by Wilson are clearly distinguishable: *Lugar v. Edmondson Oil Co.,* —— U.S. ——, —— n. 21, 102 S.Ct. 2744, 2755 n. 21, 73 L.Ed.2d 482 (1982) is explicitly "limited to the particular context of prejudgment attachment," and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), involved enforcement by police of a "state enforced custom of segregating the races"—certainly an example of significant encouragement if not coercion.

Accordingly, we conclude that even if the findings of the Article 78 court do not operate as collateral estoppel, Wilson's assertions are insufficient to support an allegation of state action.

## II. The Human Rights Law Claim

Wilson contends that the decision dismissing his pendant claim under the New York Human Rights Law on grounds of res judicata was erroneous because New York does not apply the traditional doctrine of res judicata to claims under the Human Rights Law.

In July, 1980, Wilson brought an action before the New York State Division of Human Rights, ("the Division") alleging that defendants had terminated his employment for reasons of racial discrimination in violation of the New York Human Rights Law. He contends that the present complaint is not the same as the complaint before the Division, in that he is now complaining that defendants dismissed him in retaliation for alleging that his supervisor gave him a negative evaluation for reasons of racism.

It may be that racial discrimination and retaliation are not always the same claims. Nevertheless, in this case, the two are the same. Under New York law, subsequent actions under the Human Rights Law are barred if based on "the same incident." *Emil v. Dewey,* 49 N.Y.2d 968, 970, 428 N.Y.S.2d 887, 887, 406 N.E.2d 744 (1980). The incident of which Wilson complains is the same incident about which he complained before the Division—his termination, which he contends here and contended before the Division was caused by his criticizing his superior for giving him a negative evaluation, allegedly for reasons of racial discrimination.

At his deposition in this action, Wilson stated that when he filed his complaint with the Division, he asserted that he believed he had been terminated because he complained about his negative evaluation. (Transcript of Wilson Deposition at 286–88, Ex. H to Affidavit of Luis Rodriguez). Furthermore, the Investigation Report of the Human Rights Division (Exhibit R to Rodriguez Affidavit) indicates that the negative evaluation was a subject of testimony before the Division. Moreover, the College's Director of Business Affairs, who attended the hearing, states that "the *major* subject of the investigation was plaintiff's allegation that he was discharged discriminatorily because of his complaint about his evaluation." (Rodriguez Reply Affidavit at 9) (emphasis added).

Thus, it appears that if a hearing were conducted on the pendant claim, we would be required to hear much of the same testimony that the Division has already received and considered, which is strong evidence of the fact that the incident considered by the Division is the same incident at issue here.

■ We conclude that the incident of which Wilson complained before the Division is the same incident of which he complains here, and that, under New York law, *see Emil v. Dewey, supra,* the pendant claim is barred.

■ Moreover, even if the claim were not barred as a matter of law, we believe that it would be inappropriate for a federal court to exercise its discretion to entertain it. A claim under New York law, which a New York agency has been established to adjudicate, should be presented first to that agency. Thus, if the claim were being presented here for the first time, we would decline to accept it.

For the reasons stated above, the motion for reargument is denied. The constitutional claims, the claims under 42 U.S.C. §§ 1983 and 1985(3), and the claim under the New York Human Rights Law are dismissed.

It is so ordered.