Eric **DAHLBERG**, Plaintiff,

v.

Carl F. **BECKER**; Govern, McDowell & Becker; Ellen M. Dahlberg and Harvey E. Stoddard, Jr., Defendants.

Carl F. **BECKER**; Govern, McDowell & Becker, Third-Party Plaintiffs,

v.

Herbert **JORDAN**, Randlett Walster, and Jordan & Walster, Third-Party Defendants.

No. 83–CV–944.

United States District Court, N.D. New York.

Jan. 3, 1984.

Jordan & Walster, Roxbury, N.Y., for plaintiff; Herbert Jordan, Roxbury, N.Y., of counsel.

Roche & Wolkenbreit, P.C., Albany, N.Y., for defendant Ellen Dahlberg; Stuart C. Henderson, Albany, N.Y., of counsel.

Kernan & Kernan, P.C., Utica, N.Y., for defendants/third-party plaintiffs Carl F. Becker and Govern, McDowell & Becker; Andrea Lynch, Utica, N.Y., of counsel.

Maynard, O'Connor & Smith, Albany, N.Y., for defendant Stoddard; Arthur R. Flores, Albany, N.Y., of counsel.

Herbert Jordan, Randlett Walster, and Jordan & Walster, third-party defendants, pro se.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

This action arises out of the alleged violations of plaintiff's civil rights by defendants Ellen M. Dahlberg, Carl F. Becker, Mr. Becker's law firm, Govern, McDowell & Becker, and Harvey E. Stoddard, Jr., sheriff of Schoharie County, New York. The action is brought pursuant to 42 U.S.C. § 1983, and jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343. Before this Court are defendant Ellen Dahlberg's motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), third party defendants Jordan & Walster's motion to dismiss the third party complaint of defendants Carl Becker and Govern, McDowell & Becker, Fed.R.Civ.P. 12(b)(6), and to dis-

qualify the law firm of Roche and Wolkenbreit, P.C. from its representation of Ellen Dahlberg, and the law firm of Kernan and Kernan, P.C. from its representation of defendants Becker and Govern, McDowell & Becker based on Canons 4, 7, and 9 of the Code of Professional Responsibility.[1]

## II

The unfortunate familial discord which underlies the instant action began, insofar as relevant to this action, in November of 1981 when plaintiff Eric Dahlberg commenced divorce proceedings against his wife Ellen. Mrs. Dahlberg answered the complaint which had been served upon her by her husband and counterclaimed for her own divorce. Apparently, after negotiations between the parties, it was agreed that a judgment of divorce would be entered in favor of Ellen. A stipulation was entered into between the parties on March 12, 1982, and a judgment of divorce was signed on June 30, 1982, apparently adopting the terms of the stipulation.

In November of 1982, the defendant attorneys prepared an order to show cause why plaintiff Eric Dahlberg should not be punished for contempt for allegedly having failed to make certain payments required by the divorce decree. The order to show cause was based on an affirmation of defendant Becker as well as an affidavit by Ellen Dahlberg and was made returnable on December 16, 1982. Eric Dahlberg never appeared on the return date of the order to show cause. Accordingly, sometime in May of 1983, the defendant attorneys prepared and obtained a commitment order providing for plaintiff's arrest until certain attorney's and maintenance fees were paid and a promissory note in favor of his former wife Ellen was executed. On June 7, 1983, a deputy of defendant Sheriff Stoddard arrested Eric Dahlberg and transported him to the Schoharie County jail. At the jail, certain sheriff's employees informed plaintiff that in order to obtain release he would have to pay $250.00 in fees to Mrs. Dahlberg's attorneys and $300.00 in maintenance payments as well as execute a promissory note and certain financing statements. Plaintiff was then brought before a county court judge who ordered him held without bail. Later that day, friends of plaintiff provided him with the necessary funds and the promissory note. Despite plaintiff's willingness to execute the note, the county court judge refused to order his release without authorization from a justice of the supreme court or from Ellen Dahlberg's attorneys, since the judge was unable to determine if the promissory note and financing statements were those required by the commitment order. Consequently, plaintiff was confined in the county jail overnight. It was not until the next morning that Ellen Dahlberg's attorneys called the county court judge and authorized plaintiff's release.

The gravamen of plaintiff's complaint is that these defendants, acting under color of state law, effected an unlawful seizure and imprisonment of plaintiff's person, thereby depriving him of his fourth amendment rights. In particular, plaintiff claims that the defendant attorneys and defendant Ellen Dahlberg "intentionally caused an unreasonable seizure of plaintiff's person ... [and] intentionally caused the false arrest and imprisonment of plaintiff in violation of the Fourth Amendment ..." by (1) intentionally preparing a false affidavit and presenting it to a court as a basis for obtaining valuable notes and instruments; (2) intentionally and/or negligently omitting from the order to show cause the notice and warning required by section 756 of the New York Judiciary Law; (3) intentionally and/or negligently serving an order to show cause for contempt upon an attorney whose authority had expired, in violation of section 761 of the New York Judiciary law; (4) intentionally and/or negligently failing to supply a promissory note

---

1. Defendants Carl Becker and Govern, McDowell & Becker have also moved to stay the taking of certain depositions pursuant to Fed.R. Civ.P. 26(c). That motion was granted in an oral decision from the bench on October 28, 1983, at which time the Court stayed all discovery pending resolution of the remaining motions.

and financing statements with the commitment order or failing to describe these documents so that they could be identified by the judge before whom plaintiff was brought. (Complaint, ¶ 32(a)—32(f).). With respect to defendant Stoddard, plaintiff claims that he caused plaintiff to be "needlessly and unreasonably subjected to excessive force, and degrading and humiliating treatment . . . ." (Complaint, ¶ 33). On the basis of these allegations, plaintiff seeks compensatory damages totalling $150,-000.00.

### III

It is well settled that a complaint should not be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *accord Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Weisman v. LeLandais*, 532 F.2d 308, 310–11 (2d Cir.1976) (per curiam). In deciding a motion to dismiss, the factual allegations in the complaint must be taken as true. *Kugler v. Helfant*, 421 U.S. 117, 125 & n. 5, 95 S.Ct. 1524, 1531 & n. 5, 44 L.Ed.2d 15 (1975); *Fine v. City of New York*, 529 F.2d 70, 75 (2d Cir.1975). Here, even taking plaintiff's allegations as true, this Court concludes that plaintiff's complaint fails to state a claim against the moving defendant.

### IV

The threshold inquiry in a § 1983 action is twofold. The Court must consider both whether the conduct complained of was committed by a person acting under color of state law as well as whether that conduct deprived a person of rights, privileges, or immunities secured by the Constitution. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). Because this Court concludes that defendant Ellen Dahlberg's actions were not taken under color of state law, consideration of plaintiff's alleged constitutional deprivations is unnecessary.

### A. *Ellen Dahlberg's motion to dismiss*

It is plaintiff's position that defendant Ellen Dahlberg acted under color of state law by invoking the aid of state officials to effect a seizure of plaintiff's person in pursuit of her private pecuniary interests. Defendant, on the other hand, contends simply that under well settled § 1983 doctrine, her actions may not be said to have been taken under color of state law. Both parties point to the relatively recent Supreme Court decision in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), and, not suprisingly, urge differing interpretations of that decision.

In essence, the *Lugar* decision held that a private creditor who obtained an ex parte prejudgment attachment order from a state court judge could be sued under § 1983. The Court found that the actions of the state judge constituted state action and that the actions of the creditor were taken under color of state law. The test for state action or action taken under color of state law enunciated by the Court was twofold.

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

457 U.S. at 937, 102 S.Ct. at 2754. For the reasons which follow, this Court is persuaded that the holding of *Lugar* does not, as plaintiff contends, dictate a finding that defendant Ellen Dahlberg acted under color of state law.

Concededly, the precise holding of *Lugar* is an elusive one and has generated, even in its infancy, a host of judicial attempts to effect its proper application. *See, e.g., Long v. Citizen's Bank & Trust Co.*, 563

F.Supp. 1203, 1211 (D.Kan.1983). Notwithstanding any apparent uncertainty spawned in the wake of *Lugar*, this Court concludes that that decision proves unavailing to plaintiff.

As an initial matter, it is important to note that the *Lugar* majority expressly limited its holding that state action exists where a private party invokes a state's legal procedures solely to cases involving prejudgment attachment procedures. Specifically, the Court held:

> Contrary to the suggestion of JUSTICE POWELL'S dissent, we do not hold today that "a private party's mere invocation of state legal procedures constitutes 'joint participation' or 'conspiracy' with state officials satisfying the § 1983 requirement of action under color of law." *Post*, at 951. *The holding today, as the above analysis makes clear, is limited to the particular context of prejudgment attachment.*

457 U.S. at 939 n. 21, 102 S.Ct. at 2755 n. 21 (emphasis added). Following the decision in *Lugar*, courts confronted with the question of whether private action may be held to have been taken under color of state law have been unanimous in giving heed to the Court's footnote and expressly limiting the holding of that case to the context of prejudgment attachment. *See Deal v. Newport Datsun Ltd,* 706 F.2d 141, 142 (4th Cir.1983); *Wilson v. Pfeiffer,* 565 F.Supp. 115, 118 (S.D.N.Y.1983); *Lee v. Patel,* 564 F.Supp. 755, 759 (E.D.Va.1983); *Long v. Citizen's Bank & Trust Co.,* 563 F.Supp. 1203, 1214–15 (D.Kan.1983).

Even more importantly, however, it is clear that the factual situation underlying plaintiff's allegations of defendants' actions having been taken under color of state law fails to bring this case within the test enunciated by the *Lugar* Court. Significantly, the Court there viewed as "essential to the proper disposition of the case" determination of whether the state attachment *procedure* which prompted the litigation was itself unconstitutional. 457 U.S. at 940, 102 S.Ct. at 2755. Ultimately, the Court concluded that the plaintiff there

had in fact challenged the state statute as procedurally defective under the fourteenth amendment. *Id.* at 941, 102 S.Ct. at 2756. In the present case, no such attack on the New York State contempt procedures has been made. Indeed, plaintiff merely has alleged an abuse of those procedures by these defendants. The *Lugar* Court carefully detailed the analysis to be employed in such a situation:

> Petitioner presented three counts in his complaint. Count three was a pendent claim based on state tort law; counts one and two claimed violations of the Due Process Clause. Count two alleged that the deprivation of property resulted from respondents' "malicious, wanton, willful, opressive [*sic*], [and] unlawful acts." By "unlawful," petitioner apparently meant "unlawful under state law." To say this, however, is to say that the conduct of which petitioner complained could not be ascribed to any governmental decision; rather, respondents were acting contrary to the relevant policy articulated by the State. Nor did they have the authority of state officials to put the weight of the State behind their private decision, *i.e.,* this case does not fall within the abuse of authority doctrine recognized in *Monroe v. Pape,* 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961). *That respondents invoked the statute without the grounds to do so could in no way be attributed to a state rule or a state decision. Count two, therefore, does not state a cause of action under § 1983 but challenges only private action.*

457 U.S. at 940, 102 S.Ct. at 2756 (emphasis added). The Court concluded its discussion of the requirement that a state statute or procedure be challenged as defective in order for a private party's violation of it to be deemed under color of state law by noting that "[w]hile private misuse of a state statute does not describe conduct that can be attributed to the State, the procedural scheme created by the statute obviously is the product of state action. This is subject to constitutional restraints and properly may be addressed in a § 1983 action, if the

second element of the state-action requirement is met as well." 457 U.S. at 941, 102 S.Ct. at 2756.[2]

█ It is clear, therefore, that the present case involves a situation wholly distinct from that underlying *Lugar*. Indeed, the facts here fit precisely within the category which the Court expressly held not to warrant a finding of color of state law. Because plaintiff has raised no objection here to the constitutional validity of New York's contempt procedures, but rather has challenged only the misuse or abuse of those procedures by these defendants, defendants' actions cannot be said to have been taken under color of state law.

In *Henson v. Bethlehem Steel Corp.*, 564 F.Supp. 497 (D.Md.1983), six former employees of the defendant corporation brought a § 1983 action against the corporation and two doctors employed by it. The complaint charged that the plaintiffs had suffered personal injuries resulting from their exposure to asbestos and silica dust, fibers and particulates in the course of their employment. Essentially, the plaintiffs complained of due process and equal protection violations stemming from the defendant doctors' concealment from state and federal agencies of the health risks faced by plaintiffs. In dismissing the claims, the district court relied on the holding of *Lugar*, and concluded that mere misuse or abuse of a state statute by a private doctor is not action taken under color of state law. Specifically, the court held:

> Considered under the two-part approach approved in *Lugar*, the acts of Dr. Franz complained of by plaintiffs are not "fairly attributable to the state." First, Dr. Franz's acts of concealment were not "caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the

state." Indeed, plaintiffs themselves allege that Dr. Franz's acts were in direct contravention of his duties under state statutory and common law, as well as under the standards of his profession.

. . . .

> In sum, plaintiffs' section 1983 claims do not challenge the lawfulness of actions taken by Dr. Franz, the other two defendant physicians or Bethlehem "under color of state law." Plaintiffs challenge only actions which at most may constitute misuse or abuse of powers and duties by Dr. Franz as a private citizen

. . . .

*Id.* at 503, 505.

A case even more closely analogous to the present one is *Lee v. Patel*, 564 F.Supp. 755 (E.D.Va.1983). There, defendant was faced with a § 1983 action alleging a fourteenth amendment due process violation. The action was precipitated when defendant, a motel owner, filed a complaint and accompanying sworn statements with the local magistrate resulting in plaintiffs' arrest for failure to pay rent. Concluding that defendant's actions had not been taken under color of state law, the court granted the defendant's motion to dismiss. Finding plaintiffs' reliance on certain language[3] in the *Lugar* Court's decision misplaced, the court proceeded to distinguish the *Lugar* decision. The court pointed first to the limiting statement contained in footnote 21 of the *Lugar* opinion and concluded that that decision could not be applied outside of the prejudgment attachment context. The court next observed that

> the Court in *Lugar* emphasized that a complaint that does not challenge the constitutionality of a State statute but merely alleges misuse of the State statute by a private person "does not state a

---

2. In summarizing its holding, the Court reiterated: "Petitioner did present a valid cause of action under § 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute." 457 U.S. at 942, 102 S.Ct. at 2757 (footnote omitted).

3. Specifically, plaintiffs pointed to the *Lugar* Court's statement that the "joint participation" contemplated in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), required nothing more than "invoking the aid of state officials." 564 F.Supp. at 759.

cause of action under § 1983 but challenges only private action."

564 F.Supp. at 759 (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. at 940, 102 S.Ct. at 2756). The court concluded that [t]hough "the procedural scheme created by the statute obviously is the product of state action," . . . without a procedural challenge to the State statute on due process grounds plaintiffs' § 1983 claim fails to establish that defendant, a private person, engaged in State action under the due process clause and action under color of State law under § 1983.

564 F.Supp. at 759 (quoting 457 U.S. at 941, 102 S.Ct. at 2756).[4]

Finally, of some note is the language of the district court in *Long v. Citizen's Bank & Trust Co.,* 563 F.Supp. 1203 (D.Kan. 1983) in the context of its rather thorough discussion of the implications of the *Lugar* decision.

It is obvious that the constitutionality of a state prejudgment attachment scheme is not properly in question when the provisions of that scheme have been disregarded by the private party creditor. Only when the private party creditor has properly invoked the statutory scheme and met its requirements may the deprivation of a property interest properly be traced to that scheme, and only then would the injured plaintiff have standing to challenge the constitutionality of that scheme. The interrelationship between these observations and the first part of the *Lugar* test is apparent: the "exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible" requires that the state provide a right or privilege and that the creditor *properly* invoke it. Abuse or misuse of a right or privilege is not the exercise of that right or privilege, and the constitutionality of the state's efforts to provide that right or privilege cannot properly be challenged when it has not been exercised. The Supreme Court's insistence on a constitutional challenge as a predicate to a cause of action under § 1983 in the limited context of prejudgment attachments is therefore both rational and conceptually defensible, albeit not particularly well expressed in the maze of dissenting and concurring[5] judicial dialectics.

. . . .

Because the plaintiff in this case has expressly disavowed any constitutional attack on any Kansas statute, and because he alleges that the prejudgment attachment of his Jeep was not performed in accordance with the requirements of Kansas law, he fails to present a valid cause of action under § 1983 . . . .

*Id.* at 1215 (emphasis in original).

It should be noted that plaintiff has cited other cases suggested to support a finding that these defendants acted under color of state law. In particular, plaintiff cites *Howerton v. Gabica,* 708 F.2d 380 (9th Cir.1983), and *Ragosta v. Vermont,* 556 F.Supp. 220 (D.Vt.1981), *aff'd mem.,* 697 F.2d 296 (2d Cir.1982). It is clear, however, that both of these cases are distinguishable from the present dispute. *Howerton* involved a § 1983 action against a landlord for an allegedly unlawful eviction under a state detainer statute. In reversing the district court's dismissal of the action, the Ninth Circuit premised its holding on the fact that local police officers' affirmative assistance in the physical eviction provided sufficient evidence of state action. Indeed, the court noted that the actions of the police "created an appear-

---

**4.** As in the present case, the court in *Patel* noted that the thrust of plaintiffs' complaint was that the defendants *failed* to follow the relevant state procedures for obtaining the relief sought. 564 F.Supp. at 759.

**5.** In fact, there were no concurring opinions contained in the *Lugar* decision. Justice White delivered the opinion of the court in which Justices Brennan, Marshall, Blackman and Stevens joined. Chief Justice Burger filed a brief dissent. Justice Powell also filed a dissenting opinion in which Justices Rehnquist and O'Connor joined.

ance that the police sanctioned the eviction." 708 F.2d at 384. In a footnote, the court took note of the holding in *Lugar* that "the fact '[t]hat respondents invoked the [attachment] statute without grounds to do so could in no way be attributed to a state rule or decision," 708 F.2d at 384 n. 9 (quoting *Lugar v. Edmondson,* 457 U.S. at 940, 102 S.Ct. at 2756), but felt that the case before it was clearly distinguishable "because the [plaintiffs] in this case allege that the [defendants] invoked the authority of specific state officials, the Kooskia police, to put the weight of the state behind their private decision to evict. The case therefore falls within the 'abuse of authority' doctrine of *Adickes, [United States v.] Price* [86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)], and *Monroe v. Pape* that the Court explicitly recognized in *Lugar.*" 708 F.2d at 384 n. 9.

Plaintiff cites *Ragosta* "for the proposition that participants in private litigation act under color of state law when they maliciously violate an individual's civil rights through the knowing abuse of the legal process." (Plaintiff's Memorandum of Law in Opposition to Motion to Dismiss at 5). Without extended discussion, it is obvious upon even a cursory reading of the *Ragosta* opinion that it provides little support for plaintiff's position. Essentially, the decision simply reiterates the now well settled principle that such an action will not lie unless the legal remedies allegedly abused have "already been held unconstitutional by the appellate courts." 556 F.2d at 227. Indeed, the *Ragosta* court expressly found an absence of any action under color of state law stemming from a wife's institution of divorce proceedings. As to the wife, the court found no "'joint action' involving state employees which would support a section 1983 suit." *Id.* As to the wife's attorneys, the court expressed reasoning similar to that contained in *Lugar,* holding no state action to exist absent a constitutionally infirm state procedure invoked by the defendants.

Finally, plaintiff directs the Court's attention to *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), and

argues that one who conspires with an immune state official may himself be liable under § 1983. It is not necessary, however, to address this particular theory, since plaintiff's complaint is lacking entirely in any allegation or even hint of a conspiracy. "The color of state law requirement will not be satisfied by claims against private defendants ... absent allegations that they conspired with state officials." *Rios v. Marshall,* 530 F.Supp. 351, 361 (S.D.N.Y.1981); *see also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970); *Fine v. City of New York,* 529 F.2d 70, 74 (2d Cir.1975); *Lee v. Patel,* 564 F.Supp. 755, 760–61 (E.D.Va.1983). The fact that defendant Ellen Dahlberg "merely resort[ed] to the courts ... does not make [her] a co-conspirator or a joint actor with the judge." *Dennis v. Sparks,* 449 U.S. 24, 28, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980).

Because it is clear that Ellen Dahlberg was not acting under color of state law, her motion to dismiss the complaint must be granted.

■ Based on the foregoing analysis, this Court concludes that it must dismiss the complaint insofar as it relates to the defendant attorneys as well, notwithstanding the fact that these defendants have not moved for such relief. It is well settled that the court is empowered to dismiss a complaint sua sponte for failure to state a claim. *Leonhard v. United States,* 633 F.2d 599, 609 n. 11 (2d Cir.1980), *cert. denied,* 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); *Robins v. Rarback,* 325 F.2d 929 (2d Cir.1963), *cert. denied,* 379 U.S. 974, 85 S.Ct. 670, 13 L.Ed.2d 565 (1965); *Patton v. Dumpson,* 498 F.Supp. 933, 935 n. 1 (S.D.N.Y.1980); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1357 at 593 & n. 43.

### B. *Plaintiff's motion to disqualify counsel*

Plaintiff also seeks to disqualify the firm of Roche and Wolkenbreit from its representation of Ellen Dahlberg. The basis for

the disqualification motion is the following: In support of defendant Ellen Dahlberg's motion to dismiss, counsel submitted an affidavit of Michael E. Breen, plaintiff's counsel in the divorce proceeding. Essentially, the affidavit discloses that plaintiff had consented to the contempt order which serves as the basis for the present action. Moreover, plaintiff now suggests that it seems clear that Ellen's attorneys have had discussions with Mr. Breen relating to his former representation of plaintiff. Plaintiff objects strenuously to defense counsel's use of the affidavit and other information he assumes to have been gathered from communications with Mr. Breen. In particular, plaintiff argues that any information conveyed by Mr. Breen represented a breach of the confidential relationship between attorney and client and thereby compels disqualification of the firm, which has now come into possession of these confidential communications. Without deciding the issue of any alleged impropriety, it is clear that this Court's disposition of the motion to dismiss makes unnecessary any consideration of the disqualification motion. Because Ellen Dahlberg is no longer a party to the present action, any motion to disqualify her counsel has been rendered academic.

By way of an amended motion, plaintiff also seeks to disqualify the firm of Kernan and Kernan which represents defendant Carl Becker and the defendant law firm of Govern, McDowell & Becker. Again, because this Court already has dismissed the claims against these defendants, there is no need to reach the question of disqualification.

In addition to seeking disqualification of the various counsel, plaintiff requests an order striking from the record, or sealing, the affidavit of attorney Breen as well as requiring surrender to plaintiff's counsel for destruction of all copies of the affidavit. For a number of reasons, this Court finds plaintiff's request unwarranted.

 Assuming that the affidavit does contain confidential information, it is clear that no protection of that matter is now owing. First, since the affidavit has al-ready been filed in connection with a pending New York State Supreme Court action, the content of the affidavit is now a public document and no reason exists to have it sealed in these proceedings. *See Teachers Insurance and Annuity Association of America v. Shamrock Broadcasting Co.,* 521 F.Supp. 638, 641 (S.D.N.Y.1981); *S.E.C. v. Gulf & Western Industries, Inc.,* 518 F.Supp. 675, 683 (S.D.N.Y.1981). More importantly, it is also clear that Eric Dahlberg has waived any privilege of confidentiality he may have enjoyed by disputing the Breen recounting and putting into issue his own version of his encounters and discussions with Breen. As such, any communications with Breen have lost their confidential nature and are no longer subject to suppression through assertion of the attorney/client privilege. *See Status Time Corp. v. Sharp Electronics Corp.,* 95 F.R.D. 27, 34 (S.D.N.Y.1982).

Finally, since the only remaining defendant in the present action is Sheriff Harvey Stoddard, it is noteworthy that plaintiff has expressly conceded that possession of the Breen affidavit by Sheriff Stoddard or his attorneys is unobjectionable. In a footnote to plaintiff's "Memorandum of Law in Support of Motion to Strike Affidavits ...," plaintiff acknowledges the following:

There is a fourth defendant, Sheriff Harvey E. Stoddard, Jr., represented by Maynard, O'Connor & Smith. Plaintiff does not seek their disqualification because, although they came into possession of the Breen affidavit, the information is not relevant to plaintiff's claim against the sheriff and therefore it does not prejudice plaintiff. The Maynard firm has not attempted to make any use of it.

(Plaintiff's memorandum at 2 n. *).

It therefore is clear to this Court that no grounds exist warranting either sealing or striking from the record the Breen affidavit.

C. *Third party defendants' motion to dismiss defendant attorneys' third party complaint*

The attorney defendants filed, soon after this action was commenced, a third party

complaint against plaintiff's counsel, Jordan & Walster. That complaint charges essentially that Jordan & Walster undertook representation of plaintiff prior to and with knowledge of the contempt proceeding, but failed to extricate plaintiff from the travails he faced in that proceeding. Accordingly, third party plaintiffs assert that Jordan & Walster is itself responsible for any harm suffered by plaintiff Eric Dahlberg and that third party plaintiffs are therefore entitled to indemnification for any damages which may be awarded plaintiff. Moreover, third party plaintiffs allege that Jordan & Walster "conspired with the plaintiff herein [Eric Dahlberg] and intentionally and willfully allowed the plaintiff to fail to purge himself of contempt and intentionally failed to take legal steps to vacate the contempt order and knowingly allowed plaintiff to be incarcerated for the purpose of creating an alleged federal cause of action." (Third party complaint, ¶ 5). As to this claim, third party plaintiffs seek $100,000.00 in punitive damages. Third party defendant Jordan and Walster has moved to dismiss the third party complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6).[6]

■ On the basis of the rather skeletal third party complaint, it is not clear whether third party plaintiffs attempt to allege federal or state law claims. This Court is persuaded, however, that no colorable federal claim[7] has been asserted. Moreover, the claim for indemnification is rendered academic in light of this Court's disposition of the main claims. What remains, therefore, is what appears to be a state tort claim susceptible of perhaps two different labels. The complaint asserts claims either for malicious prosecution or for the unique New York concept of prima facie tort. For the foregoing reasons, this Court concludes that whatever the rubric, these third party claims also will be dismissed.

■ Because these claims are unsupported by either federal question or diversity jurisdiction, the only proper jurisdictional predicate is found in the form of ancillary jurisdiction. *See Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). It is now well settled that whether or not to entertain ancillary state law claims lies within the discretion of the district court. *See generally* 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1444 at 234–35 and cases cited therein. Where the main action has been dismissed before trial, dismissal of the ancillary state claims is particularly appropriate. *Federman v. Empire Fire & Marine Insurance Co.*, 597 F.2d 798, 811 (2d Cir.1979); C. Wright, *Law of Federal Courts* 515 (4th ed. 1983). Here, although the entire federal action has not been dismissed, that part relevant to defendants' third party claim, and to which that claim is ancillary, is no longer before this Court. Because the third party claim is essentially unrelated to the federal claim now before the Court, the Court, in its discretion, chooses not to entertain this claim. *See Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 375–76, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978) ("not mere factual similarity but logical dependence" required for proper invocation of ancillary jurisdiction); *Finkel v. United States*, 385 F.Supp. 333, 336 (S.D.N.Y.1974) (no ancillary jurisdiction where third party state claims "pose[d] issues basically irrelevant to the one presented by the federal action").

Moreover, this Court is persuaded that in the interest of "judicial economy, convenience and fairness to litigants," *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966), the exercise of such jurisdiction would be an imprudent course. Were the third party complaint to be maintained as

---

**6.** It also appears that plaintiff seeks to have the third party complaint stricken pursuant to Fed.R.Civ.P. 14(a).

**7.** To the extent the third party complaint alleges a § 1983 cause of action, it fails to state a claim for the precise reason that plaintiff's complaint so fails, namely, a failure to establish the color of state law requirement.

part of the present action, plaintiff Eric Dahlberg would be confronted with the unfortunate situation of having his claim argued by a law firm that was a third party defendant. Certainly, the conflict of interest that would necessarily develop would not be in plaintiff's best interest and he almost certainly would require substitution of counsel. To force plaintiff into such a posture at this stage of the litigation could well serve to prejudice his cause, even if only financially. Accordingly, the third party claims are better relegated to a state forum.

### D. Attorneys' fees

All moving parties have requested that the Court award them reasonable attorneys' fees. Defendant Ellen Dahlberg's request is based on 42 U.S.C. § 1988.[8] Third party defendant Jordan & Walster bases its request on Fed.R.Civ.P. 11.[9] For the reasons which follow, both requests for fees are denied.

■■■■ With respect to defendant Ellen Dahlberg, it is of course true that she is a prevailing party and therefore entitled, in the Court's discretion, to an award of fees pursuant to 42 U.S.C. § 1988. *Milwe v. Cavuoto*, 653 F.2d 80, 82 (2d Cir.1981). However, the standard by which fees are to be awarded to successful § 1983 defendants is somewhat stricter than that governing awards to prevailing plaintiffs. A fee award to a prevailing defendant is appropriate only upon a finding that the plaintiff's action was frivolous, unreasonable, or

without foundation. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420–421, 98 S.Ct. 694, 699–700, 54 L.Ed.2d 846 (1978) (Title VII); *Mid-Hudson Legal Services, Inc. v. G & U, Inc.*, 578 F.2d 34, 37 (2d Cir.1978). The present case "is hardly the paradigm of frivolity or unreasonableness which has led courts in the past to award attorney's fees to prevailing defendants." *Turner v. Lynch*, 534 F.Supp. 686, 689 (S.D.N.Y.1982). Accordingly, defendant Ellen Dahlberg's application for attorney's fees is denied.

■■■■ With respect to third party defendant Jordan & Walster's Rule 11 application, this Court does not find, on the basis of the record before it, that defendant Ellen Dahlberg's conduct of the third party action was either frivolous or represented a bad faith attempt to wilfully abuse the judicial process. *See Nemeroff v. Abelson*, 704 F.2d 652 (2d Cir.1983) (fee award under Rule 11 upheld where suit was continued without colorable claims in bad faith); *Andre v. Merrill Lynch Ready Assets Trust*, 97 F.R.D. 699, 702–03 (S.D.N.Y.1983) (Rule 11 fee award where baseless and frivolous suit advanced for purposes of harassment and coercion). This conclusion is particularly warranted in light of the fact that the Court has, by its disposition of the third party claim, not passed judgment on the merits of that claim. Accordingly, Jordan & Walster's request for an award of attorney's fees is similarly denied.

---

**8.** 42 U.S.C. § 1988 provides, in relevant part: In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

**9.** Fed.R.Civ.P. 11 provides, in relevant part:
Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... A party who is not represented by an attorney shall sign his pleading, motion, or other paper.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it

is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

### E. *Rule 54 certification*

As a final matter, plaintiff has requested that should the Court grant defendant's motion to dismiss, it certify, pursuant to Fed.R.Civ.P. 54(b) that "there is no just reason for delay ..." and that it direct the entry of a final judgment for purposes of an interlocutory appeal. At the outset, it should be noted that the court is granted considerable discretion in its decision whether or not to issue a Rule 54 certificate. *Cold Metal Process Co. v. United Engineering & Foundry Co.*, 351 U.S. 445, 452, 76 S.Ct. 904, 908, 100 L.Ed. 1311 (1956); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956); *see generally* 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2659 at 97–98 (1983). "Because of the strong federal policy against piecemeal review several courts have stated that the district court should make the express determination only in the infrequent case in which a failure to do so might have a harsh effect." *Id.* at 99 (footnotes omitted). Plaintiff argues here that the threat of piecemeal appeals is more than offset by the prospect of piecemeal trials should the decision of this Court on the instant motions ultimately be reversed.[10] This Court is persuaded, however, that the circumstances of the present case do not meet the requirements for Rule 54 certification, and, accordingly, such certification will not issue.

▮▮▮ First, contrary to plaintiff's contention, there is substantial factual interdependence between the adjudicated and unadjudicated matters herein involved. While it is true, as plaintiff suggests, that the fundamental legal issue underlying the moving defendant's position, i.e., no color of state law, is not called into play in the claim against Sheriff Stoddard, all the factual allegations necessarily are the same. Moreover, it is clear that plaintiff will not be prejudiced by the delay attendant upon a later appeal. "[S]ome showing must be made by [plaintiff] in order to overcome the normal rule that no appeal be heard until the entire case has been completed." 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2659 at 100 (footnotes omitted). Here, plaintiff has simply failed to show "some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 942 (2d Cir.1968).

### V

On balance, this Court concludes that plaintiff's complaint fails to state a claim against defendants Ellen Dahlberg, Carl Becker, and Govern, McDowell & Becker. Accordingly, Ellen Dahlberg's motion to dismiss is granted. Similarly, the complaint is also dismissed as against defendants Becker and Govern, McDowell & Becker, notwithstanding these defendants' failure to so move. Plaintiff's motion to disqualify the various defense counsel is denied as moot, and the motion to seal or strike the Breen affidavit is denied for the reasons set forth above. Plaintiff's motion to dismiss the third party claim is granted, inasmuch as the Court declines, in its discretion, to exercise ancillary jurisdiction over these claims. Finally, all moving parties' requests for awards of attorneys' fees are denied. This Court's prior stay of discovery hereby is vacated with respect to the remaining parties.

It is so Ordered.

---

**10.** Plaintiff's hopes for a reversal in this case are certainly not as well founded as they might be were the appealable issue one involving a "controlling question of law as to which there is substantial ground for difference of opinion...." 28 U.S.C. § 1292(b).