543 F.2d 461
 Rosalie M. ARLINGHAUS, Executrix of the Will of Frank H.
Arlinghaus, and Rosalie M. Arlinghaus,
Individually, Plaintiff-Appellant,
v.
J. Richmond RITENOUR and John J. Lipsky, Defendants-Appellees,
and
Miriam Pepper and Sidney Pepper, Defendants.
 No. 158, Docket 75-7616.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 20, 1976.
Decided Oct. 26, 1976.
 
 Preben Jensen, New York City (Casey, Lane & Mittendorf, and Michael J. Connelly, New York City, of counsel), for plaintiff-appellant.
 Raymond P. O'Keefe, New York City (Charles A. Scharf, New York City, of counsel), for defendants-appellees.
 Before FRIENDLY, HAYS and TIMBERS, Circuit Judges.
 PER CURIAM:
 
 
 1
 This action in the District Court for the Southern District of New York was brought in 1968 by plaintiff Rosalie M. Arlinghaus, individually and as executrix of the will of her husband Frank H. Arlinghaus. The action related to her sale, in both capacities, of shares of stock of a closely-held corporation, Modern Teleservice, Inc. (Teleservice), to defendants Ritenour and Lipsky, officers and directors of Teleservice, and to defendant Miriam Pepper, who is the wife of defendant Sidney Pepper and had been designated by him as a purchaser of the stock. Pepper had served as attorney for Teleservice, for Frank Arlinghaus, its controlling stockholder, and for Mrs. Arlinghaus, individually and as executrix of Frank Arling- haus' estate. Federal jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332, and also on § 10(b) and § 27 of the Securities Exchange Act. The complaint contained five claims; certain of these were alleged against all the defendants and others only against some. A principal ground of the complaint was that the defendants allegedly had caused plaintiff to sell the Teleservice stock at what they knew was an unduly low price, in breach of their fiduciary obligations and in violation of § 10(b) of the Securities Exchange Act and the SEC's Rule 10b-5; another was that Ritenour and Lipsky, whose continued activity was important to Teleservice, allegedly had threatened to resign unless they were allowed to purchase stock. Plaintiff sought rescission or, in the alternative, compensatory damages, as well as punitive damages.
 
 
 2
 The action finally came on for a bench trial before Judge Werker in May 1975. In August 1975, the judge filed his opinion. He dismissed all state law claims against defendants-appellees Ritenour and Lipsky. He also dismissed a conspiracy claim and the claim under the Securities Exchange Act against all defendants, and the claim against Miriam Pepper. A principal ground for dismissal of the state law claims against Ritenour and Lipsky was the finding that they had made full disclosure to Pepper of the value of Teleservice and had disclaimed any rumored threats of resignation directly to Mrs. Arlinghaus. However, the court sustained a state law claim charging Pepper with breach of his fiduciary duty, finding that, despite Ritenour's and Lipsky's disclaimers, Pepper, to their knowledge, continued to misrepresent to Mrs. Arlinghaus that Ritenour and Lipsky had threatened to resign unless she made the stock sale and also that Pepper concealed the worth of Teleservice from her. The court refused to hold Pepper liable for any loss of potential profits sustained by Mrs. Arlinghaus on the stock sold to Ritenour and Lipsky, but did hold him liable for any profits obtained as a result of his resale of stock purchased in Mrs. Pepper's name from Mrs. Arlinghaus. The case was referred to a magistrate to determine the amount of these profits. The court also ruled that Pepper was liable for punitive damages but said it would limit these to the amount to be awarded as compensatory damages.
 
 
 3
 More than a month later, on the motion of Ritenour and Lipsky, the court entered final judgment as to these two defendants. Notice of the proposed entry of judgment was served on the attorneys representing Pepper and Mrs. Arlinghaus; the district court files do not reveal that either made any objection. The court, after reciting that there was "no just reason for delay of entry of judgment, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure," severed Ritenour and Lipsky as defendants and dismissed the complaint against them with costs. Plaintiff took a timely appeal. She thereafter made repeated applications for extensions of time in which to file briefs, in the hope of consolidating her appeal from Judge Werker's decision with Pepper's ultimate likely appeal when the accounting should have been completed. Although both Ritenour and Lipsky, and oddly enough defendant Pepper, initially opposed one or two of Mrs. Arlinghaus' motions to extend time, they ultimately acquiesced in the extensions, ceasing any formal opposition. Extensions were granted over a period of six months, but finally the Staff Counsel for our Civil Appeals Management Plan evidently concluded that enough time had elapsed and denied any further extension "in the absence of exceptional circumstances." Mrs. Arlinghaus did not contest this final scheduling order, and the case thus was set on our September calendar, along with an appeal in a different action involving a dispute between Pepper on one side and Mrs. Arlinghaus and others on the other.
 
 
 4
 As could readily have been anticipated, the essence of Mrs. Arlinghaus' appeal is an attack on the district court's conclusion that disclosure to Pepper by Ritenour and Lipsky was the legal equivalent of disclosure to her. She argues that Ritenour and Lipsky knew that Pepper was interested in obtaining Teleservice stock for less than its worth; that in pursuance of that plan he had lied to her about their threats of resignation and had continued to refer to such threats even after the disclaimer by them; and that there was every reason to believe he would not communicate to her any knowledge acquired from Ritenour and Lipsky that the Teleservice shares were worth far more than she was obtaining on the sale. If we should sustain these contentions, we would, in effect, have decided the appeal Pepper will take from the decision against him without having accorded him a right to be heard.
 
 
 5
 The case clearly demonstrates the validity of the proposition that the mere existence of multiple parties and the dismissal of some do not afford sufficient warrant for entry of final judgment under F.R.Civ.P. 54(b) and that the required determination "that there is no just reason for delay" ought not to be made as a matter of rote even when, as here, there was no objection from the party who would be adversely affected or anyone else. As the late Judge Hastie said in Panichella v. Pennsylvania Railroad Company, 252 F.2d 452, 455 (3 Cir. 1958), the determination involves "weighing the overall policy against piecemeal appeals against whatever exigencies the case at hand may present. . . . It follows that 54(b) orders should not be entered routinely or as a courtesy or accommodation to counsel."[1] We cited this comment with approval in Campbell v. Westmoreland Farm, Inc., 403 F.2d 939, 942 (2 Cir. 1968), where we dismissed an appeal, and in Schwartz v. Compagnie Generale Transatlantique, 405 F.2d 270, 274-75 (2 Cir. 1968), where we did not but suggested that when Rule 54(b) orders are granted, "the trial judge marshal the competing considerations and state the ones considered to be most important." In a more recent and even more apposite case, Gumer v. Shearson, Hammill & Co., Inc., 516 F.2d 283, 286 (2 Cir. 1974), we expressed concern lest our determination of some issues involving the defendant against whom the complaint had been dismissed "might result in prejudice to the other defendants who would not have had an opportunity before us to participate in the determination of those issues," and we reiterated the desirability of district judges' not contenting themselves with repeating the conclusory language of Rule 54(b) but making "a brief reasoned statement" why there was "no just reason for delay."[2] We fear that the press of business in the district courts may have caused these suggestions to go unheeded, at least when the district judge receives so little help from the parties as here.
 
 
 6
 The benefit of such a reasoned statement is not merely that, as stressed in Gumer, it will aid us in discharging our duty to review the district court's exercise of discretion in issuing the certificate, see Sears, Roebuck & Co. v. Mackey, 351 U.S. 427, 437, 76 S.Ct. 895, 100 L.Ed.2d 1297 (1956); Cold Metal Process Co. v. United Engineering & Foundry Co., 351 U.S. 445, 452-53, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), but that it will aid the district judge himself. A decisionmaker obliged to give reasons to support his decision may find they do not; "the opinion will not write." Here the only factor favoring inclusion of the certificate was that, by forcing Mrs. Arlinghaus to take an appeal immediately rather than to await the fixing of damages against Pepper, a process that should not have been lengthy,[3] Ritenour and Lipsky might be rid, if the appeal should fail, of the cloud that has been hanging over them since 1968. This consideration was clearly outweighed by others. Not only would this court be required to review the same conduct twice, in defiance of the federal policy against piecemeal appeals, but our decision could have a profound effect on the appeal which Pepper will almost certainly take from the judgment against him and also on the appeal which Mrs. Arlinghaus may take from the judge's refusal to hold Pepper liable for the profits realized by Ritenour and Lipsky. That neither Mrs. Arlinghaus' counsel nor Pepper's counsel objected to the issuance of the 54(b) certificate is not sufficient reason to sustain the district court's action. The district court has an independent duty to avoid piecemeal appeals and protect parties' rights against prejudice resulting from premature appeal. We are confident that if the district judge had endeavored to put pen to paper, he would ineluctably have concluded that it would be an abuse of discretion to find that there was "no just reason for delay" in entering final judgment as to defendants Ritenour and Lipsky in this case. We so hold and dismiss the appeal for want of jurisdiction.[4] No costs.
 
 
 
 [1]
 The court called attention to the Advisory Committee's note to the 1946 amendment of Rule 54(b), which stated that the certificate provision was intended only to confer "a discretionary power to afford a remedy in the infrequent harsh case . . . ." See 6 Moore, Federal Practice P 54.01(6) at 53-54 (1976)
 
 
 [2]
 See also Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 364 (3 Cir. 1975), adopting the suggestion of this circuit
 
 
 [3]
 The damages accounting was referred to a magistrate in the Southern District of New York on August 28, 1975. His report had not yet been filed with the district judge at the date of his untimely death in July 1976. We would not expect an accounting should take so long in a relatively simple case like this one
 
 
 [4]
 If so advised, the parties may use the briefs and appendix submitted on this appeal when the case comes here again after final judgment. Also, should the members of the present panel be available, it would promote judicial economy if the appeals were referred to them