Tom PETERSON, Plaintiff
and Appellant,

v.

Kurt ZERR and Interstate Investments,
a North Dakota Partnership,
Defendants and Appellees,

and

Robert Valeu and Joe Hauer,
Defendants.

Civ. No. 880281.

Supreme Court of North Dakota.

June 27, 1989.

Alan C. Erickson (argued), Bismarck, for plaintiff and appellant.

Evans & Moench, Ltd., Bismarck, for defendant and appellee Kurt Zerr, argued by Dale W. Moench, Bismarck.

Bard & Bard, Bismarck, for defendant and appellee Interstate Investments, argued by Dean F. Bard, Bismarck.

LEVINE, Justice.

Tom Peterson appeals from a summary judgment which dismissed his action for tortious interference with contract and misrepresentation against Kurt Zerr and awarded Zerr attorney fees and costs. Peterson also appeals from the trial court's denial of his motion to amend his complaint to include a breach of contract claim against Interstate Investments [Interstate], the remaining defendant in Peterson's tortious interference and misrepresentation action. We hold that the Rule 54(b), N.D. R.Civ.P., order certifying the appeal of the summary judgment was improvidently granted and that the appeal from denial of the motion to amend and award of attorney fees is interlocutory. We therefore dismiss the appeal.

In 1978 Peterson and Ed Stone incorporated Golden West Travel, Inc. [Golden West]. At that time Golden West leased 1,800 square feet of property from Interstate for a 10 year term, with an option for an additional 5 years. Golden West occupied 900 square feet of the property and subleased the remaining 900 square feet to the law offices of Sperry & Erickson. In May 1981, Golden West, with the approval of Interstate, assigned the 1978 primary lease to Peterson and Stone. Peterson and Stone, in turn, sold their interests in Golden West to Kurt Zerr and Richard Grenz and subleased the property back to Golden West. In 1982 Gerald Willer purchased Grenz's interest, and in December 1984, Zerr and Willer sold Golden West to Robert Valeu, Joe Hauer, and Ron Henrickson.

In February 1985, Interstate cancelled the 1978 primary lease with Peterson and Stone, and Golden West informed Sperry & Erickson that its sublease would be terminated so the travel agency could be expanded to the entire 1,800 square feet. Golden West ultimately terminated its sublease with Peterson and vacated the premises.

Peterson brought a lawsuit against Golden West, Zerr, Valeu, Hauer, and Interstate alleging breach of contract, tortious interference with contract, and misrepresentation. The court severed the case into two separate actions. The first action consisted of Peterson's contract claim against Golden West for breach of the May 1981 sublease. The second action consisted of Peterson's claims against Zerr, Valeu, Hauer, and Interstate for tortious interference with contract and misrepresentation. Peterson and Golden West settled the breach of contract claim prior to the trial in that action. As part of that settlement, Peterson also settled all claims against Hauer and Valeu in connection with the second action for tortious interference with contract and misrepresentation.

In his complaint in the second action, Peterson asserted, among other things, that the defendants had intentionally interfered with his 1978 primary lease with Interstate, his May 1981 sublease with Golden West, and the sublease with Sperry & Erickson. Peterson also asserted that Interstate and Zerr, "jointly and severally, intentionally misrepresented the existence of lease rights and interests, and did not disclose the written sub-lease that each of them had signed, and thereby intentionally and knowingly misinformed, proximately causing substantial loss...."

Zerr moved for summary judgment dismissing all claims against him in the second action and for costs and attorney fees. The trial court granted summary judgment against Peterson and awarded Zerr costs and attorney fees in the amount of $3,456.32 under §§ 28-26-01 and 28-26-31, N.D.C.C. Peterson then moved to defer the determination of attorney fees until after his trial with Interstate. The trial court determined this request was frivolous and awarded Zerr an additional $200 in attorney fees. Peterson also moved to amend his complaint to allege a breach of contract action against Interstate for breach of the 1978 primary lease. The trial court denied the motion.

Peterson and Zerr stipulated that there was no just reason for delay of the entry of a final judgment of dismissal. *See* Rule 54(b), N.D.R.Civ.P. The trial court granted the Rule 54(b) certification, and later supplemented the judgment with an "Order Clarifying Rule 54(b) Judgment," in which the court stated its reasons for granting the certification:

"1. The summary judgment in favor of defendant Zerr, dismisses a joint tortfeasor under allegations of the complaint setting forth alleged actions of Interstate Investments and Zerr, arising out of the same facts and events, involving the sale of shares and status of lease of Golden West, Inc. A trial against one of the joint tort-feasors, Interstate Investment, would not be complete and could result in further proceedings, in the event that the dismissal of defendant Zerr were reversed upon appeal. Final judgment avoids the possibility of two trials in the District Court.

"2. A review on appeal of the judgment of dismissal in favor of defendant Zerr and against the plaintiff is not likely to be avoided, should the plaintiff determine the need for an appeal, as a result of the Interstate Investment trial. That is, resolution of the case against Interstate Investment does not appear at this time to mitigate, persuade, or otherwise lend itself to encouraging the plaintiff to not appeal the judgment already entered. Accordingly, an appeal appears just as likely after the trial, as it does before the trial, leaving no reason to anticipate that a trial against Interstate Investment might avoid the need for an appeal.

"3. The issues on appeal in the judgment entered in favor of defendant Zerr do not appear to be similar, providing any efficiency on review, to any prospective issues after trial involving Interstate Investment. As such, trial against Interstate Investment, giving rise to whatever issues on appeal may be involved in that matter, would not seem to be efficiently resolved against both parties in one appeal. The two issues identified by the plaintiff on the appeal of the judgment entered, including the summary judgment dismissing the claim, and the award of attorney fees in favor of the defendant, are not prospective issues at this time after trial against Interstate Investment.

\* \* \* \* \* \*

"In reviewing the certification under Rule 54(b), the court has considered recent case law, and the above determination specifically includes a review of *Union State Bank vs. Woell,* 357 N.W.2d 234[ (1984) ]. Entry of a final judgment, appealable by the plaintiff at this time, or alternatively a waiver of appeal if not commenced within sixty days, does appear to the court at this time to be the most economical and efficient procedure, and is also the most likely among any alternative to avoid the possibility of two trials in the District Court. Entry of final judgment most assures that a trial in District Court, which includes a jury, will resolve the case against the remaining defendant, Interstate Investment, or if necessary against co-defendant, Kurt Zerr, without a possibility of remand, and two trials.

"This order clarifying the Rule 54(b) certification further recognizes the stipulation between the parties, ..."

Peterson appealed, challenging the summary judgment dismissing his claims against Zerr, the award of costs and attorney fees, and the trial court's refusal to

allow him to amend his complaint to allege a breach of contract action against Interstate.

Although Peterson and Zerr have not addressed the appealability of the district court's decisions,[1] we may consider appealability issues *sua sponte*. *E.g.*, *Harmon Motors v. First Nat'l Bank & Trust*, 436 N.W.2d 240, 241 (N.D.1989). We have recently summarized the interrelationship between § 28–27–02, N.D.C.C., and Rule 54(b) with regard to appealability:

> "In *Gillan v. Saffell*, 395 N.W.2d 148 (N.D.1986), and *Gast Construction Co. v. Brighton Partnership*, 422 N.W.2d 389 (N.D.1988), we established the framework for analyzing this court's jurisdiction in cases where there is an appeal and there are unadjudicated claims remaining to be resolved by the trial court. *See also Regstad v. Steffes*, 433 N.W.2d 202 (N.D.1988); *Matter of Estate of Stuckle*, 427 N.W.2d 96, 101 (N.D. 1988) (Meschke, J., concurring). In *Gast Construction Co. v. Brighton Partnership, supra*, 422 N.W.2d at 390, we said:
>
> " 'First, the order appealed from must meet one of the statutory criteria of appealability set forth in NDCC § 28–27–02. If it does not, our inquiry need go no further and the appeal must be dismissed. *Gillan v. Saffell, supra*. If it does, then Rule 54(b), NDRCivP, must be complied with. *E.g.*, *Production Credit Ass'n of Grafton v. Porter*, 390 N.W.2d 50 (N.D.1986). If it is not, we are without jurisdiction. *Ibid.*' " *Sargent County Bank v. Wentworth*, 434 N.W.2d 562, 563 (N.D.1989).

### MOTION TO AMEND COMPLAINT AGAINST INTERSTATE

■ We have previously held that an order granting or denying a motion to amend a pleading is appealable if it involves the merits of the case, and proceeded to consider the appeal without discussing the applicability of Rule 54(b). *See Geo–Mobile, Inc. v. Dean Bender Chevrolet*, 386 N.W.2d 918 (N.D.1986). However, *Geo–Mobile, Inc.* predates the "shift in our appellate procedure regarding the applicability of Rule 54(b) certification to orders that are appealable pursuant to Section 28–27–02, N.D.C.C." *Harmon Motors v. First Nat'l Bank & Trust, supra*, 436 N.W.2d at 241. To the extent that *Geo–Mobile, Inc.* appears to sanction an appeal from a denial of a motion to amend a complaint without the additional requirement of a Rule 54(b) certification, it is overruled. The record in this case contains no Rule 54(b) certification pertaining to the trial court's ruling on Peterson's motion to amend his complaint against Interstate, and Peterson's claims against Interstate remain pending below. Accordingly, we are without jurisdiction to consider this issue on appeal.

### SUMMARY JUDGMENT

■ An order granting summary judgment dismissing all of the plaintiff's claims against a defendant is an appealable order under § 28–27–02, N.D.C.C. *See generally Sheets v. Letnes, Marshall & Fiedler, Ltd.*, 311 N.W.2d 175, 179 (N.D.1981). Rule 54(b) is clearly applicable in this multiple party case because the summary judgment does not adjudicate all of the claims against all of the parties.[2] Although the trial court

---

**1.** Interstate, however, challenges the appealability of the trial court's denial of Peterson's motion to amend the complaint.

**2.** Rule 54(b), N.D.R.Civ.P., provides:

"*(b) Judgment Upon Multiple Claims or Involving Multiple Parties.* If more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or if multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of that determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties does not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

determined that there was no just reason for delay in directing entry of judgment and set forth the reasons for its decision, that does not end our inquiry. We are not bound by the trial court's determination, but will *sua sponte* review the certification to determine if the trial court has abused its discretion. *Union State Bank v. Woell*, 357 N.W.2d 234, 236 (N.D.1984).

■ In *Union State Bank v. Woell, supra*, this court discussed the reasons for Rule 54(b) and said that the Rule should be construed to preserve our long-standing policy against piecemeal appeals. We recognized that the purpose of the Rule is to balance the competing policies of permitting accelerated review of certain judgments with the desire to avoid the waste in appellate resources which can accompany piecemeal review, and that therefore certification should not be entered routinely or as a courtesy or accommodation to counsel. Thus, the trial court is to weigh the policy against piecemeal appeals with whatever exigencies the case may present, and the burden is on the proponent to establish prejudice and hardship which would result if certification were denied. We further noted that although the United States Supreme Court, in *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 9–10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1, 12 (1980), did not believe the phrase "infrequent harsh case" to be a reliable benchmark for appellate review, that language accurately reflects the intent of our Rule 54(b). We also outlined the following list of suggested factors for trial courts to consider in assessing a request for Rule 54(b) certification:

" 'In reviewing 54(b) certifications, other courts have considered the following factors, *inter alia:* (1) the relationship between the adjudicated and unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in setoff against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).' " *Union State Bank v. Woell, supra*, 357 N.W.2d at 238 [quoting *Allis–Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d 360, 364 (3d Cir.1975) ].

With these considerations in mind, we examine the trial court's reasoning to determine whether it abused its discretion [3] in granting the Rule 54(b) certification.

**3.** We note with interest what one court has said about the abuse of discretion standard when applied to a review of a certification under a state counterpart to Rule 54(b):

"As we proceed to review this particular exercise of discretion, a preliminary word is in order on the subject of the exercise of discretion generally. Whenever that term of art is used, it connotes, by definition, some range within which discretion may be legitimately exercised one way or the other without constituting an abuse. The notion of a range of discretion, however, is not an immutable and invariable criterion in all of its myriad applications. The range of discretion frequently changes with the subject matter calling for the exercise of discretion. In handling the progress of a trial, for instance, as where the judge rules on a leading question, permits a continuance, or assesses the need for a mistrial, the range of discretion is very broad and the exercise of discretion will rarely be reversed. On the issue now before us, by way of contrast, the discretionary range is far more narrow. It is circumscribed by strong policy considerations and well-articulated guidelines."
*Canterbury Riding Condo. v. Chesapeake Inv.*, 66 Md.App. 635, 505 A.2d 858, 864 (1986) [Footnote omitted]. *But compare Old Broadway Corp. v. Hjelle*, 411 N.W.2d 81 (N.D.1987). *See also Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980) [applying two-pronged approach for federal appellate review of Rule 54(b) order accompanied by trial court findings setting forth the reasons for certification: (1) reviewing court must "scrutinize" trial court's evaluation of juridical concerns such as the interrelationship of claims; (2) if juridical concerns have been met, reviewing court should give "substantial deference" to trial court's assessment of the equities].

The trial court acknowledged in paragraph 1 that the summary judgment in favor of Zerr dismisses one of two joint tort-feasors under allegations of the complaint "arising out of the same facts and events, ..." In a multiple party situation "where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants." *Cullen v. Margiotta*, 811 F.2d 698, 710 (2d Cir.), *cert. denied sub nom. Nassau County Republican Committee v. Cullen*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Under these circumstances, possibilities abound that the remaining defendants, by virtue of their lack of opportunity to participate, will be prejudiced by the decision on the certified appeal, and that the facts ultimately adduced at trial of the remaining defendants could undermine the soundness of the decision on the certified appeal. *See Cullen v. Margiotta, supra,* 811 F.2d at 711; *Arlinghaus v. Ritenour,* 543 F.2d 461, 463–464 (2d Cir. 1976). Although in paragraph 3 the trial court states that the issues on appeal from the summary judgment "do not appear to be similar ... to any prospective issues after trial involving Interstate ...," it is clear that the claims against both Zerr and Interstate arise from the same series of underlying transactions and occurrences and are related both factually and legally. This weighs heavily against Rule 54(b) certification. *See Union State Bank v. Woell, supra.*

In paragraph 2 the trial court states that appellate review of Zerr's dismissal from the action "is not likely to be avoided, should the plaintiff determine the need for an appeal, as a result of the Interstate ... trial." This reasoning appears to be an application of factor 2 in *Union State Bank v. Woell, supra, i.e.,* the possibility that the need for review might or might not be mooted by future developments in the trial court. The most common situation in which this possibility arises involves the dismissal of impleader claims requesting, among other things, indemnification, subro-

gation, and contribution. *See* 10 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d,* § 2659, at p. 106 (1983). Rule 54(b) certification in these situations is generally frowned upon because if the defendant is not found liable in the main action there never will be any need to litigate the impleader claim. *See* 10 Wright, Miller & Kane, *supra; see also Buurman v. Central Valley School Dist.,* 371 N.W.2d 146, 149 (N.D.1985). While the possibility that a need for review might be mooted by future developments in the trial court "is a distinct argument of substantial weight supporting the normal postponement of review until the entire case shall be decided" [*Panichella v. Pennsylvania Railroad Company,* 252 F.2d 452, 455 (3d Cir.1958), *cert. denied,* 361 U.S. 932, 80 S.Ct. 370, 4 L.Ed.2d 353 (1960) ], we do not believe that the converse is true. Should Peterson prevail on his claims against Interstate, he may choose not to appeal the dismissal of Zerr. If Peterson loses against Interstate, he could then appeal from that judgment and raise the issue of Zerr's dismissal. In any event, even an absence of the possibility that the need for review may be obviated by future developments in the trial court is not, standing alone, reason to certify under Rule 54(b).

The rationale of paragraph 3, *i.e.,* that the "issues on appeal in the judgment entered in favor of defendant Zerr do not appear to be similar ... to any prospective issues after trial involving Interstate," and therefore, the issues "would not seem to be efficiently resolved against both parties in one appeal," is somewhat baffling. The allegations against Zerr and Interstate arise out of the same facts and circumstances surrounding the sale of Golden West shares and the status of the various leases. "It is uneconomical for an appellate court to review facts on an appeal following a Rule 54(b) certification that it is likely to be forced to consider again when another appeal is brought after the district court renders its decision on the remaining claims or as to the remaining parties." 10 Wright, Miller & Kane, *supra,* § 2659, at pp. 103–104 [Footnote omitted.] The fact

that it is likely an appeal will be taken after an unadjudicated claim is decided which involves the same factual situation as that involved in the Rule 54(b) certified appeal clearly militates against granting certification. *See Union State Bank v. Woell, supra,* 357 N.W.2d at 239.

It is obvious that the impetus for granting certification in this case is the belief or hope that immediate appellate review might avoid the possibility of two trials in the district court should we ultimately determine that the summary judgment was erroneously granted. We have expressed our skepticism of this rationale in the past [*see Herzog v. Yuill,* 399 N.W.2d 287, 288 n. 1 (N.D.1987) ], and conclude that, absent unusual and compelling circumstances not present here, this consideration does not alone afford sufficient warrant for granting a Rule 54(b) certification.

In *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 45–46 (1st Cir.1988), the First Circuit Court of Appeals rejected a similar assertion that, because immediate review would obviate the possibility of a retrial, a Rule 54(b) certification was properly granted:

"Nothing in the papers before us suggests a pressing, exceptional need for immediate appellate intervention, or grave injustice of the sort remediable only by allowing an appeal to be taken forthwith, or dire hardship of a unique kind. The hypothetical portrait of additional trials painted by plaintiff looks to us to be not only speculative, but sophistic. Virtually *any* interlocutory appeal from a dispositive ruling said to be erroneous contains the potential for requiring a retrial. Moreover, interpretations of Rule 54(b) must take into account systemic effects as well as individualized ones. To entertain an early appeal just because reversal of a ruling made by the district court *might* transpire and *might* expedite a particular appellant's case would defoliate Rule 54(b)'s protective copse. This would leave the way clear for the four horsemen of too easily available piecemeal appellate review: congestion, duplication, delay, and added expenses. The path, we think, should not be so unobstructed." [Emphasis in original.]

Because "[i]t is always true ... that a second trial may be required if a district court is ultimately reversed on issues which were decided before trial on summary judgment," several courts have specifically rejected the argument that a Rule 54(b) certification should be granted because "an immediate appeal is necessary to avoid a piecemeal trial of the case." *Vasquez v. Ferre,* 410 F.Supp. 1385, 1386 (D.N.J.1976). *See also Brunswick Corp. v. Sheridan,* 582 F.2d 175, 185 (2d Cir.1978) ["The policy against piecemeal appeals of intertwined claims should not be subverted by the specters of additional trials summoned up by the able district judge."]; *Dahlberg v. Becker,* 581 F.Supp. 855, 867 (N.D.N.Y.) *aff'd,* 748 F.2d 85 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985) [rejecting argument that "the threat of piecemeal appeals is more than offset by the prospect of piecemeal trials should the decision of this Court on the instant motions ultimately be reversed."].

In short, as now Justice Kennedy has said, speaking for the court in *Morrison–Knudsen Co., Inc. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981), judgments under Rule 54(b) must be reserved "for the unusual case in which the costs and risks of multiplying the number of proceedings and of overcrowding the appellate docket are outbalanced by pressing needs of the litigants for an early and separate judgment as to some claims or parties." Missing in this case is a showing of any out-of-the-ordinary circumstances or cognizable, unusual hardships to the litigants that will arise if resolution of the issues on this appeal is deferred.

For example, among the more prominent hardships that may result from delay is an extraordinarily harsh economic effect. This is vividly demonstrated by the United States Supreme Court's decision in *Curtiss–Wright Corp. v. General Electric Co.,* 446 U.S. 1, 100 S.Ct. 1460, 64 L.Ed.2d 1 (1980). In that case the trial court granted

the plaintiff summary judgment on a $19 million contract claim, leaving other claims and counterclaims pending. The Supreme Court upheld the Rule 54(b) certification. The district court had determined that, because of the complex nature of the remaining claims, it would be many months or years before the entire controversy was decided and that the difference between the current interest rates and the statutory prejudgment rate would cause the plaintiff to suffer a severe daily financial loss unless certification was granted.

Of course, a harsh economic effect is not the only adverse effect that is cognizable for Rule 54(b) purposes. However, one commentator has pointed out that where, as here, one defendant in a multiple defendant case is dismissed from the lawsuit, the range of appropriate considerations is narrowed:

"As a condition to the direction of final judgment, the Rule states that the court must make an 'express determination that there is no just reason for delay.' In cases in which the judgment is for the claimant, delay in the entry of judgment entails delay in receiving relief that has been awarded, and possibly in the res judicata effect of the decision and interest....

"In cases in which the court has dismissed a claim, leaving others to be determined, or has dismissed the action against one or more but fewer than all the parties, the range of considerations narrows. There is no judgment to be executed, and the losing party pays out no money. The judgment imposes no liens. Under some circumstances a judgment might be sought for its res judicata effect. In most instances, however, the interest of the claimant in the entry of a final judgment is limited to his interest in an immediate appeal, and often this interest is essentially the same as his interest would be in an interlocutory appeal. This means that 'there must be some danger of hardship or injustice through delay which would be alleviated by immediate appeal.' " 6 Moore's Federal Practice ¶ 54.41[3], at pp. 54-264—54-266 (1988) [Footnotes omitted.]

Nothing in the record before us remotely suggests that this is the "infrequent harsh case" warranting use of the Rule 54(b) procedure. The interests of the litigants in having the summary judgment certified as final appear limited to Peterson's not uncommon desire to have us pass upon his legal and factual arguments in advance of his trial with Interstate and Zerr's not uncommon desire to have himself finally extricated from this litigation. However, the rationale employed by the trial court to justify the Rule 54(b) certification, if accepted, would sanction our review of virtually every appeal from an otherwise interlocutory judgment. Such an interpretation and application of Rule 54(b) would emasculate its purpose. Accordingly, we conclude that the trial court abused its discretion in granting the Rule 54(b) certification.

## ATTORNEY FEES

Costs and attorney fees were awarded to Zerr in connection with the granting of the summary judgment motion. We have concluded that the Rule 54(b) certification of the summary judgment was improvidently granted and that the summary judgment is therefore not final or appealable. We have no jurisdiction to review what might otherwise be an appealable order that is ancillary to and dependent upon resolution of the issues raised in a nonappealable order. *Cf. Gast Construction Co. v. Brighton Partnership*, 422 N.W.2d 389, 391 (N.D. 1988); *Herzog v. Yuill*, 399 N.W.2d 287, 292-293 (N.D.1987); *see also Ford v. Holden*, 2 Haw.App. 549, 634 P.2d 1051, 1052 (1981).

For the reasons stated in this opinion, we dismiss the appeal. Interstate's costs on appeal are assessed against Peterson. Peterson and Zerr are responsible for their own costs on appeal.

ERICKSTAD, C.J., and VANDE WALLE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I concur in the majority opinion. I recognize that the majority opinion severely lim-

its the discretion to be exercised by the trial court in granting an order under Rule 54(b), N.D.R.Civ.P., as described in *Union State Bank v. Woell*, 357 N.W.2d 234 (N.D. 1984). Heretofore I would have had to conclude that the trial court did not abuse its discretion in applying the factors we adopted in *Woell* to the facts in this case. Nevertheless I agree with the rationale of the Federal cases quoted in the majority opinion, and attorneys and trial judges should be aware that, notwithstanding what was said in *Woell* and the apparent flexibility of the *Woell* factors, Rule 54(b) orders should be reserved for the unusual case and will be scrutinized accordingly on appeal.

MESCHKE, Justice, concurring and dissenting.

I concur that Peterson's appeal from denial of his motion to amend his complaint against Interstate is interlocutory and not appealable. I respectfully dissent from the dismissal of the appeal from the summary judgment which dismissed all claims against Zerr.

N.D.R.Civ.P. 54(b) instructs: "[I]f multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the ... parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

The trial court dismissed all of Peterson's claims against Zerr. The trial court declared that it was a complete and final disposition of claims between them, expressly determining that there was no just reason for delay and expressly directing entry of judgment.

If Peterson had sued Zerr separately, as he was entitled to do under Rule 20 on "Permissive Joinder of Parties," the judgment would be final and appealable. If the trial court had clearly severed the claim against Zerr under Rule 21 ("Any claim against a party may be severed and proceeded with separately"), and then entered this summary judgment, the judgment would have been appealable without Rule

54(b) action. Similarly, under Rule 54(b), a trial court may direct the entry of a final judgment as to one of several parties—a "single judicial unit." 6 Moore's Federal Practice ¶ 54.04. The majority decision ignores the evolution of the "single judicial unit" theory, distorts the history of Rule 54(b), and unwittingly rewrites the Rule about judge-made finality for appeals.

The depressing feature of this 54(b) certification by the trial court is not that one was made, but the garrulous explanation in the "Clarifying Order" which seems to have been prepared by appellant's counsel, not by the trial court. Since Rule 54(b) directs no set procedure for initiating a certification, it is not surprising to find an appellant's counsel aiding the process of judge-made finality. "The reasons why there is 'no just reason for delay' and the importance to 'sound judicial administration' must satisfactorily appear before this court will entertain piecemeal appeals." *Estate of Stuckle*, 427 N.W.2d 96, 103, footnote 18 (N.D.1988) (Meschke, concurring). It should be enough if we can discern the reasons for the trial court's certification, even if those reasons are obscured by a foliage of wordiness.

Stripped of its verbiage, the trial court's "Clarifying Order" gave three reasons for its entry of a final judgment:

1. "Final judgment avoids the possibility of two trials...."
2. There is "reason to anticipate that a trial against Interstate Investment [alone] might avoid the need for an appeal."
3. The issues as to Zerr "do not appear to be similar" to those "involving Interstate."

The majority opinion reweighs the third reason, redetermines that the "claims against both Zerr and Interstate arise from the same series of underlying transactions and occurrences and are related both factually and legally," and, therefore, concludes that this factor "weighs heavily against Rule 54(b) certification." The majority thus rejects one of the trial court's reasons supporting an appeal and substitutes its own reason "weighing heavily against" ap-

peal. Compare the majority decision to the charting of this factor by the United States Supreme Court in its landmark opinion in *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 9, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980):

> "It was therefore proper ... to consider such factors as whether the claims under review were separable from the others remaining to be adjudicated and whether the nature of the claims already determined was such that no appellate court would have to decide the same issues more than once even if there were subsequent appeals."

As the United States Supreme Court long ago ruled in *Cold Metal Process Co. v. United Engineering Foundry Co.*, 351 U.S. 445, 450–452, 76 S.Ct. 904, 907–909, 100 L.Ed. 1311 (1956) and as *Alcan Aluminum Corp. v. Carlsberg Financial Corp.*, 689 F.2d 815 (9th Cir.1982) has more recently explained, Rule 54(b) does not require that claims adjudged must be separate from and independent of those retained.[1]

Peterson's claims against Interstate and Zerr are sufficiently separable to be severable. To be sure, at some points in his prolix amended complaint, Peterson claimed that Interstate and Zerr, "jointly and severally, intentionally" interfered with Peterson's lease rights. (For example, paragraph X.) Nevertheless, the complaint against Zerr had a different frame of reference than the complaint against Interstate. Interstate was Peterson's landlord, and Peterson alleged separate elements as to Interstate. (*See* paragraphs I, V, XII, XIII, and XIV of the complaint.) Zerr, on the other hand, was a stockholder and officer in a corporate subtenant, having purchased his stock from Peterson (*See* paragraph II) and later transferring his corporate interest to others who settled with Peterson (*See* paragraphs III, IV, VII,

VIII, and IX). Interstate's cancellation of its 1978 primary lease with Peterson was obviously a major event of "interference" with Peterson's sublease to Golden West, quite apart from downstream conduct by Zerr contributing to this contractual melee. While Peterson sought damages from both Interstate and Zerr, Peterson grounded his claim on different conduct by each. As the separate summary judgment attests, Peterson's claim against Zerr is sufficiently severable from his claim against Interstate to justify an independent disposition.

The majority opinion also rejects the second reason, concluding that "an absence of the possibility that the need for review may be obviated by future developments in the trial court is not, *standing alone*, reason to certify under Rule 54(b)." (My emphasis). Declaring that "[t]he allegations against Zerr and Interstate arise out of the same facts and circumstances," the majority appraises this reason from an appendix perspective rather than the trial court's intimate knowledge of the entire case. Again, the majority revises the trial court's findings and ignores a recognized factor that "no appellate court would have to decide the same issues more than once." *Curtiss–Wright Corp.*, 446 U.S., at 9, 100 S.Ct., at 1465.

Finally, the majority expresses doubt that the belief "that immediate appellate review might avoid the possibility of two trials" is a valid juridical factor. In any event, the majority concludes that "this consideration does *not alone* afford sufficient warrant for granting a Rule 54(b) certification." (My emphasis). I think the majority is dead wrong. Undoubtedly, there are cases where the possibility of the impact of duplicative trials is so minimal as not to be credited. But, a choice between the possibility of two complex trials or two narrow appeals is one the trial court is

---

1. "Not all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims. The function of the district court under the Rule is to act as a 'dispatcher.' *Id.*, [Sears, Roebuck & Co. v. Mackey, 351 U.S.] at [427] 435, 76 S.Ct. [895] at 899 [100 L.Ed. 1297 (1956) ]. It is left to

the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. *Ibid.* This discretion is to be exercised 'in the interest of sound judicial administration.' *Id.*, at 437, 76 S.Ct., at 900." *Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S., at 8, 100 S.Ct., at 1465.

better able to make. All finality is made by trial courts. Conservation of judicial energy and elimination of delays are not subjects of exclusive appellate wisdom. We should not arrogate to ourselves, as appellate judges, complete control of the effectiveness and efficiency of judicial administration.

While piecemeal appeals are to be avoided where appropriately possible, avoiding lengthy and costly multiple trials is an equally worthy objective. Lengthy repetitious trials drain both private and public resources, often more than several appeals on distinct issues. The time and effort of appellate judges is not paramount to fairness for witnesses and litigants.

After picking apart the trial court's assessment of juridical factors and making each fall when "standing alone," the majority opinion assumes that there is no "harsh economic effect" on the parties and concludes that "[m]issing in this case is a showing of any out-of-the-ordinary circumstances or cognizable, unusual hardships to the litigants." I believe the majority's conclusion is as mistaken as its analysis.

First, the majority leans heavily on the outdated and discredited reference to the "infrequent harsh case." This phrase was used in the Notes of the Advisory Committee in 1946 when Rule 54(b) was first designed for multiple claims. Multiple parties were not made expressly subject to the rule until 1961. *Union State Bank v. Woell*, 357 N.W.2d 234, 237, footnote 4 (N.D.1984) gave this vague phrase undeserved dignity by declaring that it "accurately reflects the stated intent of Rule 54(b)...." [2] But, the phrase does not express a measurable standard. The United States Supreme Court has pointed out, *Curtiss–Wright Corp., supra,* 446 U.S., at 10, 100 S.Ct., at 1466, that the phrase, "infrequent harsh case," "is neither workable nor entirely reliable as a benchmark for appellate review. There is no indication it was ever intended by the drafters to function as such."

Second, though not set out in the trial court's "Clarifying Order," there is an evident "harsh economic effect" to this summary judgment. Peterson, the plaintiff, is compelled to pay a $3,656.32 judgment before trial of his main lawsuit. He must pay Zerr now even though he must delay final resolution of his claim against Zerr until after separate trial of his claim against another. Perhaps the majority considers $3,656 insubstantial, even if it is not nominal. By implication in the ruling of the majority, we are given to understand either that $3,656 is not a "harsh economic effect" or that the trial court was derelict in not mentioning it as an obvious reason.

Third, the majority's emphasis on a "harsh economic effect" as a separate, albeit uncodified, criterion of Rule 54(b) action is procedurally hostile to any intermediate appeal by a plaintiff. I am not reassured by the recital that "a harsh economic effect is not the only adverse effect that is cognizable for Rule 54(b) purposes" when no other cognizable "adverse effect" is identified. The majority opinion does not describe any occasion when a plaintiff will be able to appeal the dismissal of one or more defendants. Since a plaintiff, as "the

---

**2.** *Union State Bank v. Woell, supra,* ruled that a 54(b) certification, of a Bank's judgment on a contractual claim was improvidently granted where the defendant's counterclaim for torts of fraud, duress and coercion was still pending because the "claims ... and counterclaim arose from the same series of transactions and occurrences, are logically related legally and factually, and are closely intertwined." That mechanistic treatment of Rule 54(b) is surely questionable.

"The mere presence of ["nonfrivolous counterclaims"], however, does not render a Rule 54(b) certification inappropriate. If it did, Rule 54(b) would lose much of its utility. In *Cold Metal Process Co. v. United Engineering*

*& Foundry Co.,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956), this Court explained that counterclaims, whether compulsory or permissive, present no special problems for Rule 54(b) determinations; counterclaims are not to be evaluated differently from other claims." *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S., at 9, 100 S.Ct., at 1465.

Strangely, the court in *Woell* placed the burden of persuasion about Rule 54(b) factors on the party who sought the judgment, not the party who sought the appeal. "The Bank failed to meet that burden." 357 N.W.2d, at 239. At least, today's majority decision does not continue that mistake, even though it does give the *Woell* opinion more credence than it merits.

losing party[,] pays out no money," (recited in the quotation on page 300 of the majority opinion), there can be no "adverse economic effect" to a plaintiff from dismissal of one of his claims or from dismissal as to one of his defendants. I believe this stated approach narrows 54(b) too far, stripping the trial court of its intended discretion and construing Rule 54(b) as a one-way avenue for appeals by losing defendants only. As in *Curtiss–Wright Corp., supra,* a defendant can appeal as soon as he has to pay money; a plaintiff cannot appeal immediately when he doesn't get any. Narrowing Rule 54(b) in that way is a procedural perversion.

The majority opinion undercuts the substantial deference that should be given to the trial court's determination that there is no just reason for delay:

> "[T]he task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case. As we have noted, that assessment merits *substantial deference* on review." *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S., at 12, 100 S.Ct., at 1467 (1980) (My emphasis).

Ordinarily litigants should be able to rely on the express action of the trial court creating a final and appealable judgment. *See* 6 Moore's Federal Practice ¶ 54.04[3–5], footnote 4. A trial judge is in a much better position than appellate judges to assess the desirability of a final judgment, whether for juridical concerns, equitable concerns, or both.

Even if there is a juridical possibility of appeal on related issues at a later date, the trial court's discretion should be respected. As the United States Supreme Court carefully pointed out in *Curtiss–Wright Corp.,* 446 U.S., at 9, footnote 2, 100 S.Ct., at 1465, footnote 9, some factors adverse to

intermediate appeal "might perhaps be offset by a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." Rather than the "narrowing" of discretion accomplished by the majority opinion, the Supreme Court's suggestion marks the wide discretion vested in a trial court by Rule 54(b).

I hope that the majority's decision is merely another pothole in an important avenue for appellate review, and not a selective barricade creating a "highway to heaven" for unhappy defendants. Perhaps it is merely a petulant response to too many appeals with indifferent briefs and inadequate research. If so, I can subscribe to the sentiment, but I cannot rationalize the result for this case. Because I do not believe that this trial court's certification under Rule 54(b) was an abuse of discretion, I respectfully dissent.[3]

---

**3.** This court might better "narrow" the allowance of Rule 54(b) certifications on truly non-final determinations such as an order changing venue, *Jerry Harmon Motors v. First National Bank & Trust,* 436 N.W.2d 240, 242–243 (N.D. 1989) (Meschke, concurring) and an order granting a new trial, *Grenz v. Kelsch,* 436 N.W.2d 552, 557 (N.D.1989) (Meschke, concurring). Although, thus far, this court has been

unwilling to limit the use of Rule 54(b) on such non-final matters, it is plain that Rule 54(b) was never intended to make truly interlocutory orders appealable. 6 Moore's Federal Practice ¶ 54.30[1]. A trial court cannot, "in the exercise of its discretion, treat as 'final' that which is not 'final'...." *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 437, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956).